# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **BEST VACUUM, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 2249 |
| | ) | |
| v. | ) | Judge William T. Hart |
| | ) | |
| **IAN DESIGN, INC.,** | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Best Vacuum, Inc., filed a complaint accusing Defendant, Ian Design, Inc., of trademark infringement, trademark dilution and unfair competition arising under 15 U.S.C. §§ 1114(1), 1125(c), 1125(a), and of deceptive trade practices arising under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2. Plaintiff now moves the Court to grant a preliminary injunction barring Defendant from using the internet domain names "bestvacuumcleaner.com" and "bestchoicevacuums.com." This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1 for a Report and Recommendation.

## I.  Background

Plaintiff is an Illinois corporation with its principal place of business in Chicago, Illinois. Plaintiff has done business under the name "Best Vacuum" since 1983, (Pl.'s Compl. at 5), and registered its internet domain name "bestvacuum.com" in May 1996. (Pl.'s Compl. at 2.) Plaintiff sells vacuum cleaners, air purifiers, air conditioners, dehumidifiers, humidifiers, lamps, lighting, dust bags, filters, accessories and related products through its retail stores and its

internet web site. Plaintiff currently sells eight different brands of vacuum cleaner, including Miele and Dyson brand vacuum cleaners.

Defendant is a New Jersey corporation. Like Plaintiff, Defendant sells vacuum cleaners and related products, including Miele and Dyson brand vacuum cleaners. Like Plaintiff, Defendant sells vacuum cleaners and related products on and through the internet. (Def.'s Mem. Supp. Mot. Dismiss at 1.)

On November 6, 2003, Defendant registered the internet domain name "bestvacuumcleaner.com." (Pl.'s Compl. at 6.) According to Plaintiff, in February 2004, Plaintiff demanded that Defendant stop using the "bestvacuumcleaner.com" domain name because it was confusingly similar to "bestvacuum.com." (Pl.'s Mem. Supp. Mot. at 2.) Defendant did not stop using its domain name and, on February 14, 2004, Defendant registered the domain name "bestchoicevacuums.com." (Id.) Defendant actively promotes both of its domain names through advertising and actively solicits sales and invites potential customers to engage in a variety of interactive exchanges at its website.

On March 26, 2004, Plaintiff filed its Complaint accusing Defendant of trademark infringement, trademark dilution and unfair competition arising under 15 U.S.C. §§ 1114(1), 1125(c), 1125(a), and of deceptive trade practices arising under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2. On August 13, 2004, Plaintiff filed its memorandum in support of its motion for preliminary injunction. The parties have agreed orally in open court that the decision on the motion for preliminary injunction be based on the papers submitted. Neither party submitted oral testimony.

## II.  Discussion

Plaintiff seeks a preliminary injunction to enjoin and prohibit Defendant from (a) using the internet domain names "bestvacuumcleaner.com" and "bestchoicevacuums.com," or any version thereof in connection with the description, marketing, promotion, advertising, or sale of vacuum cleaners or other similar products, (b) infringing Plaintiff's trademark, and (c) diluting Plaintiff's trademark. A preliminary injunction is a very serious remedy and should not be used except in a case clearly demanding it. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000). Plaintiff's motion for a preliminary injunction should be granted only if Plaintiff demonstrates a greater than negligible likelihood of success on the merits,[1] that Plaintiff has no adequate remedy at law, and that Plaintiff will suffer irreparable harm if preliminary relief is denied. *Barbecue Marx, Inc.*, 235 F.3d at 1043; *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). If Plaintiff can pass this threshold, the Court will then consider any irreparable harm a preliminary injunction would cause to Defendant, as well as the consequences to the public of granting or denying the requested relief. *Eli Lilly & Co.*, 233 F.3d at 461. Then, sitting as would a court of equity, the Court weighs all of these factors on a sliding scale; the more likely that Plaintiff will succeed on the merits, the less the balance of harms need favor Plaintiff. *Id.*

---

[1] The Seventh Circuit has utilized more than one standard for determining a Plaintiff's likelihood of success on the merits. *See* Morton Denlow, *The Motion for a Preliminary Injunction: Time for a Uniform Federal Standard*, 22 Rev. Litig. 495, 531 (2003). While the Seventh Circuit required a "likelihood of success on the merits" in *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000), in *Barbecue Marx, Inc.*, the panel required that plaintiff show a "greater than negligible chance of prevailing on the merits of the underlying infringement claim." 235 F.3d at 1043. *See also Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988). In this Report and Recommendation, the Court applies the less demanding standard of *Barbecue Marx, Inc.*

## A.    Likelihood of Success on the Merits

The Court considers Plaintiff's likelihood of success on the merits with regard to each of

Plaintiff's four counts and finds that Plaintiff has no likelihood of success with any of them.

> 1.    Plaintiff cannot demonstrate a greater than
> negligible chance of prevailing on the merits under
> Section 32 of the Lanham Act because Plaintiff does
> not have a registered mark.

In order for Plaintiff to prevail in its action under Section 32 of the Lanham Act, Plaintiff

must establish that Defendant is using in commerce any copy, reproduction, counterfeit, or

colorable imitation of a registered mark without permission of the registrant. 15 U.S.C.

§ 1114(1)(a). Unlike some sections of the Lanham Act, Section 32 explicitly protects against

infringement of a "registered mark." *See Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d

125, 129-30 (2d Cir. 2004); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003);

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388 n.1 (8th Cir. 1991); *Maier*

*Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 119 (9th Cir. 1968); *S Indus., Inc. v.*

*Diamond Multimedia Sys., Inc.*, 991 F. Supp. 1012, 1017 (N.D. Ill. 1998). Plaintiff does not

have a registered mark. On July 28, 2003, Plaintiff applied for registration of its "Best Vacuum"

trademark to the United States Patent and Trademark Office. (Pl.'s Compl. at 5.) That

application was initially refused and is currently pending with the United States Patent &

Trademark Office. (Decl. James Kole at Ex. A.) Because Plaintiff does not have a registered

mark, and because Section 32 of the Lanham Act protects only registered marks, Plaintiff's action

under Section 32 of the Lanham Act has no likelihood of success.

2. Plaintiff cannot demonstrate a greater than negligible chance of prevailing on the merits under Section 43(a) of the Lanham Act nor under Illinois Deceptive Trade Practices Act because Plaintiff's mark is not protectable and Defendant's mark is not likely to cause confusion among consumers.

In order for Plaintiff to prevail in its actions under Section 43(a) of the Lanham Act and 815 ILCS 510/2, Plaintiff must establish: (1) that it has a protectable trademark, and (2) the junior mark is likely to cause confusion among consumers as to the origin of the defendant's product. *Eli Lilly & Co.*, 233 F.3d at 461; *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983) (claims for unfair competition and deceptive business practices brought under Illinois Statutes are to be resolved according to the principles set forth under the Lanham Act); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994); *Thompson v. Spring-Green Lawn Care Corp.*, 466 N.E.2d 1004, 1010 (Ill. App. Ct. 1984) (Illinois courts look to federal case law and apply the same analysis to state infringement claims). Defendant argues that Plaintiff cannot show either element necessary for winning a preliminary injunction.

### a. Protectability of Plaintiff's mark

The first step in determining whether an unregistered mark or name is protectable under trademark laws is to categorize the name according to the nature of the term itself. *Int'l Kennel Club of Chicago*, 846 F.2d at 1085. Trademarks may be characterized as fanciful, arbitrary, suggestive, descriptive, or generic. Trademarks that are fanciful, arbitrary or suggestive are fully protected, while descriptive words may be trademarked only if they have acquired secondary meaning. *Id.* A mark acquires secondary meaning when most consumers associate it with the

producer rather than the product. *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 907 (7th Cir. 1986). Trademarks that are categorized as generic may never receive trademark protection. *Technical Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984). Plaintiff concedes that "Best Vacuum" is an unregistered mark that is not fanciful or arbitrary. (Pl.'s Reply at 2-3.) Plaintiff contends that "Best Vacuum" is either a suggestive mark or a descriptive mark that has acquired secondary meaning. (Pl.'s Resp. Def's Mot. Dismiss at 3.) Defendant argues that "Best Vacuum" is either a generic mark or a descriptive mark that has not acquired secondary meaning. (Def.'s Mem. Opp. Pl.'s Mot. at 6.)

Plaintiff's mark, "Best Vacuum," is not a generic term. A generic term is a term commonly used as the name or description of a kind of goods. *A.J. Canfield Co.*, 796 F.2d at 906. In other words, a generic term denotes the product rather than any of the brands of the product. *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996). Contrary to Defendant's argument, "Best Vacuum" incorporates descriptive language and does more than merely refer to the product "vacuum." Accordingly, the mark "Best Vacuum" is not a generic term.

"Best Vacuum" is a descriptive term. A term is merely descriptive when it specifically describes a characteristic or an ingredient of a product. *A.J. Canfield Co.*, 796 F.2d at 906-07. Both parties recognize that "Best" has a pre-existing or primary meaning and serves to describe the goods, i.e., vacuums, associated with the mark. (Def.'s Mem. Opp. Pl.'s Mot. at 6; Pl.'s Reply at 3.) Plaintiff argues that "Best Vacuum" is suggestive because the phrase "Best Vacuum" is suggestive of the idea that "whichever vacuum a buyer chooses, it will be superlative in all qualities that relate to vacuum cleaners." (Pl.'s Resp. Def.'s Mot. Dismiss at 3.) Plaintiff further

- 6 -

argues that, given the numerous factors that go into the buying decision for any given consumer of vacuum cleaners, the Court must recognize that "best" means something different to each individual consumer. (Pl.'s Resp. Def.'s Mot. Dismiss at 3-4.) The Court disagrees. "Self-laudatory or puffing marks are regarded as a condensed form of describing the character or quality of the goods." *In re The Boston Beer Company Ltd. P'ship*, 198 F.3d 1370, 1373 (Fed. Cir. 1999). "Best" is a laudatory or puffing term, *id.*, and Plaintiff conceded as much at oral argument. Thus, "Best Vacuum" is not a suggestive term, but a descriptive term.

Plaintiff's descriptive term "Best Vacuum" is only entitled to trademark protection if it has acquired secondary meaning. When determining whether a mark has acquired secondary meaning, the Seventh Circuit considers several factors: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying. *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1267 (7th Cir. 1989). In support of its secondary meaning argument, Plaintiff submits consumer reviews of "Best Vacuum," evidence of length of use, and amount and manner of advertising.

Because of the following, the Court is immediately skeptical that "Best Vacuum" can ever acquire secondary meaning. In *In re The Boston Beer Company*, the Court of Appeals for the Federal Circuit upheld the U.S. Patent and Trademark Office's refusal to register The Boston Beer Company's mark "the best beer in America" because the mark was a common, laudatory advertising phrase that had been used by competitors. 198 F.3d at 1373. The Boston Beer Company submitted evidence of advertising expenditures, an affidavit from its co-president, and evidence that its competitors had only used the slogan in a descriptive manner and never as a

- 7 -

trademark. *Id.* The Court rejected The Boston Beer Company's arguments and found that "the best beer in America" "is so highly laudatory and descriptive of the qualities of its product that the slogan does not and could not function as a trademark to distinguish Boston Beer's goods and serve as an indication of origin." *Id.* at 1373-74. This Court sees very strong similarities between "the best beer in America" and "Best Vacuum."

The Court now turns to Plaintiff's evidence of secondary meaning. Direct consumer testimony is relevant to the secondary meaning inquiry. *Echo Travel*, 870 F.2d at 1267. "In order to indicate secondary meaning, consumer surveys must prove more than a relatively small amount of people associate the mark with the source of the product." *Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d 988, 998 (N.D. Ill. 2000) ("*Jones Group I*"). Plaintiff submitted twelve Epinions.com consumer reviews of "Best Vacuum" and fifteen of the six hundred and twenty-six Epinions.com consumer surveys of "Best Vacuum."[2] (Pl.'s Reply at Ex. A.) The Epinions.com reviews and surveys ask customers who have just consummated a purchase at Plaintiff's web site to evaluate the customer service and experience of shopping at the web site. The reviews and surveys presented to the Court are overwhelmingly positive and most comment on Plaintiff's fine customer service, efficiency and price. (Pl.'s Reply at Ex. A.)

Plaintiff's reviews and surveys may constitute evidence of satisfied customers but they do not appear to constitute evidence of acquired secondary meaning. Plaintiff's surveys target a select constituency already familiar with, and recent consumers of, Plaintiff's product. Surveys that target a party's core constituency and/or display the trademark in question may not be reliable indicators of secondary meaning. *A.J. Canfield Co.*, 796 F.2d at 907-08 (finding consumer

---

[2] Epinion.com reviews and surveys can be found at http://www.epinions.com.

survey on Canfield's fudge unreliable because survey was conducted in Chicago, the heart of Plaintiff's market, and because the pollees were given both the source name and trademark term on the same can, thus lessening the associative response). Furthermore, the information obtained by Plaintiff's consumer surveys is vague and unhelpful. Of the reviews and surveys submitted by Plaintiff in this case, the strongest statement associating the "Best Vacuum" mark with Plaintiff's company, and the one Plaintiff highlights in its brief, is a consumer review entitled, "Their name says it all." (Pl.'s Reply at 3.) However, the text of that review reads, "Based on an Epinions review, and the fact that they were an authorized dealer for the brand I wanted, I ordered a vacuum from Best Vacuum in September (2002)." (Pl.'s Reply at Ex. A.) The review goes on to compliment Plaintiff on its price, efficiency, and customer service. (Id.) The review does not suggest that Plaintiff's "Best Vacuum" mark has acquired secondary meaning. *Compare to Echo Travel*, 870 F.2d at 1267 (direct consumer testimony included affidavits stating, "I am familiar with the ECHO TRAVEL posters used for the Spring break Florida trip" and "I directly associate the picture on that poster . . . with the ECHO TRAVEL tour to Daytona Beach and no other tour."). Rather, it suggests that Plaintiff is operating as a vendor of popular brands of vacuum cleaners and that at least one satisfied customer thinks that Plaintiff is "the best."

Evidence of amount and manner of advertising is relevant to the secondary meaning inquiry. *Echo Travel*, 870 F.2d at 1269. Plaintiff submitted an affidavit from Mr. Paul Teven, president of Plaintiff Best Vacuum, Inc. Mr. Teven states that Plaintiff has made substantially exclusive and continuous use of the trade name and trademark "Best Vacuum" in commerce since 1983 and directly to consumers via the internet since 1996. (Pl.'s Compl. at Ex. B.) Mr. Teven states that Plaintiff has spent more than one million dollars promoting the mark "Best

Vacuum" and the web site "bestvacuum.com" in print, radio, television and internet advertising. (Id.) According to Mr. Teven, Plaintiff currently spends approximately sixty thousand dollars per month on Plaintiff's web site and on internet advertising, including advertising in the most heavily used internet search engines (namely Google.com and Overture.com). (Id.) While evidence of amount and manner of advertising is relevant to the secondary meaning inquiry, this information cannot be evaluated in a vacuum. *Echo Travel*, 870 F.2d at 1269. In *Echo Travel*, the court could not evaluate the amount and manner of advertising without information on the number of potential customers or the geographical areas involved. *Id.* Furthermore, that court could not determine whether poster advertising–as opposed to word of mouth, cost, location, peer pressure, etc.–was a particularly successful or noticed form of advertising. *Id.* at 1269-70. And *in Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prods. Corp.*, the court found plaintiff's evidence of $3.4 million on advertising and marketing, resulting in over five hundred thousand cameras sold and a sales volume of ten million dollars, to be unpersuasive due to lack of context and plaintiff's virtual monopoly in the relevant camera market. 667 F. Supp. 1221, 1231 (N.D. Ill. 1987). Similarly, this Court cannot determine in a vacuum whether Plaintiff's rather general advertising expenditures were effective in establishing secondary meaning.

In *Int'l Kennel Club of Chicago*, the Seventh Circuit found secondary meaning where plaintiff, among other things, spent more than twenty-five percent of its total revenues on advertising. 846 F.2d at 1086. The plaintiff in *Int'l Kennel Club of Chicago*: (1) advertised extensively in continent-wide publications of interest to dog fanciers and in regional publications in areas where plaintiff's dog shows were held, (2) mailed out as many as fifteen thousand "premium lists" to persons on its mailing list, and (3) employed a full-time public relations

- 10 -

professional. *Id.* Furthermore, the plaintiff in *Int'l Kennel Club of Chicago* received free publicity, including feature articles accompanied by special advertising supplements, which the court viewed as evidence of successful advertising. *Id.* Such extensive advertising (including free advertising), targeting a specific consumer group and specific geographic regions is more significant to secondary meaning than Plaintiff's approximate figures for general expenditures on internet advertising.

Absent consumer testimony regarding Plaintiff's name recognition, evidence of a successful advertising campaign, or more information about how and why consumers chose to buy vacuum cleaners from Plaintiff, the advertising information before the Court cannot be meaningfully evaluated. Similarly, the length of Plaintiff's exclusive and continuous use of the "Best Vacuum" trade name cannot be meaningfully evaluated in a vacuum. The mere fact that Plaintiff has been using the name "Best Vacuum" for over twenty years does not mean that it has acquired secondary meaning. *Id.* at 1086-87 (finding secondary meaning where plaintiff used its name for fifty years, produced evidence of successful and extensive advertising campaigns, and provided evidence of actual confusion).

Amount of sales and number of customers is relevant to the secondary meaning inquiry. *Echo Travel*, 870 F.2d at 1267. On March 24, 2004, Mr. Teven stated that, "Last year [Plaintiff's] gross sales through its Internet Web site were approximately $3.75 million dollars." (Pl.'s Compl. at Ex. B.) While the volume of sales and number of customers are relevant to the secondary meaning inquiry, the Court cannot meaningfully assess Plaintiff's gross sales in a vacuum. *Echo Travel*, 870 F.2d at 1270; *Keystone Camera Prods.*, 667 F. Supp. at 1231 (evidence of ten million dollars in sales not persuasive without context). The Court does not

- 11 -

have any information on the size of Plaintiff's sales, the number of customers or individual sales made by Plaintiff,[3] nor Plaintiff's competitors' gross sales, so the Court does not give this factor much weight.

Established place in the market is relevant to the secondary meaning inquiry. *Echo Travel*, 870 F.2d at 1267. Mr. Teven states that Plaintiff is currently a leading sales representative in the United States for Miele brand vacuum cleaners. (Pl.'s Compl. at Ex. B.) This is a vague statement and the Court does not give it much weight. The Court does not know what "a leading sales representative" means with regard to Plaintiff's place in the market. Specifically, the Court does not know the number of Miele representatives in the United States, the volume of their business, the size of their market, or where Plaintiff ranks among them.

Proof of intentional copying is relevant to the secondary meaning inquiry. *Echo Travel*, 870 F.2d at 1267. Plaintiff argues that, given Plaintiff's long standing use and extensive marketing efforts, and given that Defendant and Plaintiff are direct competitors, it is highly unlikely that Defendant registered the domain name "bestvacuumcleaner.com" without knowledge of Plaintiff's use of the name. (Pl.'s Mem. Supp. Mot. at 6.) Plaintiff further argues that Defendant is expert at marketing over the internet and therefore knows that most consumers enter keywords into internet search engines in order to find and purchase products such as vacuum cleaners. (Pl.'s Mem. Supp. Mot. at 7.) Due to consumers' use of internet search engines, Plaintiff advertises heavily on the most popular search engines. (Id.) Plaintiff argues

---

[3] Plaintiff's Motion for Preliminary Injunction includes the claim that, "Plaintiff has sold its vacuum cleaner products to over fifty thousand (50,000) customers. (See Affidavit of Paul S. Teven.)" (Pl.'s Mem. Supp. Mot. at 6.) This claim does not appear in Mr. Teven's affidavit. (Pl.'s Compl. at Ex. B.)

that Defendant deliberately uses "bestvacuumcleaner.com" in order to attract customers using keywords in internet search engines. Plaintiff finds additional proof of Defenant's intent to copy in the fact that Defendant registered the site "bestchoicevacuum.com" after receiving notice of Plaintiff's claim of trademark rights in the "Best Vacuum" mark. (Id.)

Search engines play an important role in internet commerce as they help consumers navigate the internet and locate web sites relevant to their search. When generating and ranking search results, search engines consider a variety of factors, including keywords. Competing businesses may devise strategies to improve their standing or ranking in the results generated by internet search engines in the hope of growing their business. When a business's strategy includes using a competitor's name in order to divert or confuse potential customers, infringement or dilution or other unfair trade practices may be occurring. Where a competitor's strategy is to use generic and descriptive terms to market its products, wrongdoing is less likely. In this case, Plaintiff suggests that Defendant engages in unfair competition when it promotes its product as the best vacuum. The Court disagrees and does not consider this to be proof of intentional copying. There are a limited number of words in the English language available to Defendant for promoting its goods. As discussed above, "best" is a common laudatory and descriptive term. "Vacuum" is a generic term for a type of indoor cleaning tool. Plaintiff, a vacuum cleaner vendor, may not claim these terms for itself, nor cry foul when other vacuum cleaner vendors seek to use them. To place restrictions on the use of these words would unfairly inhibit competition.

The Court's decision against restricting use of "best vacuum" is supported by the evidence. When the keywords "best vacuum" are entered into the internet search engine

- 13 -

Yahoo.com more than three million results are generated, with Plaintiff's web site ranked number one. (Def.'s Mem. Supp. Mot. Dismiss at Ex. A.) The same search with Google.com produces more than three million results with Plaintiff's web site appearing sixth on the list. (Def.'s Mem. Supp. Mot. Dismiss at Ex. B.) And when the "best vacuum" search was conducted on Overture.com, Plaintiff's web site was ranked number forty-one on the list generated. At oral argument, the parties debated the significance of internet search engine rankings, but agreed that a variety of constantly changing factors and algorithms are used.[4] Regardless of the significance of the rankings, the Court agrees with Defendant that a wide variety of entities use the term "best vacuum" to identify the products they sell. (Def.'s Mem. Opp. Pl.'s Mot. at Exs. A, B, C, D.) As Defendant points out, various business entities use the term "best vacuum" to praise their vacuums in the text of their web sites, in the visible portion of their web sites, in the metatags of their web sites, and as "adwords" in order to bring their web sites to the attention of people searching for vacuums. (Def.'s Mem. Opp. Pl.'s Mot. at 8, Exs. A, B, C, D.) In light of these facts, the Court does not find Defendant's use of common descriptive words to promote its product on the internet to be evidence of intent to copy.

Plaintiff has chosen a common descriptive and laudatory phrase for its company name. Such a name is only protectable when it has acquired secondary meaning. The record does not contain sufficient meaningful direct or indirect evidence to support Plaintiff's claim of secondary meaning. This Court concludes that Plaintiff's mark "Best Vacuum" is not protectable and is not

---

[4] Because the parties admit that rankings can be manipulated and that internet search engines constantly change the factors and algorithms used for ranking sites, the Court does not consider the rankings to necessarily be substantial evidence of a party's established place in the market.

- 14 -

entitled to preliminary injunctive relief. Accordingly, this Court recommends that Plaintiff's motion for preliminary injunction be denied.

### b.      Likelihood of confusion

In order to prevail in a cause of action brought under the Lanham Act, Plaintiff must establish both that its mark "Best Vacuum" is protectable and that Defendant's mark is likely to cause confusion among consumers. In assessing the likelihood of consumer confusion, the Seventh Circuit considers seven factors: (1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use, (4) the degree of care likely to be exercised by consumers, (5) the strength of Plaintiff's mark, (6) any evidence of actual confusion, and (7) Defendant's intent (or lack thereof) to palm off its products as those of Plaintiff. *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 897 (7th Cir. 2001) ("*Jones Group II*"); *Eli Lilly & Co.,* 233 F.3d at 461-62. While the proper weight given to each factor varies from case to case, the similarity of the marks, the intent of Defendant, and evidence of actual confusion are the most important considerations. *Jones Group II,* 237 F.3d at 898; *Eli Lilly & Co.,* 233 F.3d at 462. At this preliminary stage in the proceeding, Plaintiff must establish that its chances of demonstrating likelihood of confusion are better than negligible. *Int'l Kennel Club of Chicago,* 846 F.2d at 1087.

Similarity between the marks in appearance and suggestion is relevant to the likelihood of confusion analysis. *Jones Group II,* 237 F.3d at 897; *Eli Lilly & Co.,* 233 F.3d at 461. When determining if two marks are similar, the Court considers the sound, sight, and overall impression of the two marks. *See Eli Lilly & Co.,* 233 F.3d at 462-63. It is inappropriate to

- 15 -

focus on minor stylistic differences to determine if confusion is likely if the public does not

encounter the two marks together. *Jones Group II*, 237 F.3d at 898. Rather, in such a case the

comparison should be made in light of what happens in the marketplace and not merely by

looking at the two marks side-by-side. *Id.* (citing *Meridian Mut. Ins. Co. v. Meridian Ins. Group,*

*Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997)).

Plaintiff argues that the appearance, sound and meaning of Plaintiff's "Best Vacuum"

mark is strikingly similar to Defendant's domain names "bestchoicevacuums.com" and

"bestvacuumcleaner.com." (Pl.'s Mem. Supp. Mot. at 4.) Plaintiff argues that the similarities

between the marks are especially important in internet commerce since the domain names

function as web site locators. (Id.) Finally, Plaintiff argues that, given the similarity in sound,

appearance and meaning, it is unlikely that consumers will easily distinguish between Plaintiff's

mark and Defendant's domain names. (Id.)

The Court focuses on "bestchoicevacuum" and "bestvacuumcleaner" only, as the ".com"

suffix is not important to the likelihood of confusion analysis. *Trans Union L.L.C. v. Credit*

*Research, Inc.*, 142 F. Supp. 2d 1029, 1042 (N.D. Ill. 2001). The Court finds Defendant's

domain name "bestchoicevacuum" significantly different from Plaintiff's "Best Vacuum" mark.

While there is only a one word difference between the two marks, the addition of the word

"choice" between "best" and "vacuum" changes the nature of the domain name from a potential

source identifier to a more open-ended search for a generic product. In other words, with the

inclusion of the word "choice," Defendant's domain name "bestchoicevacuum" takes on

distinctive significance and makes it less likely to be considered a source indicator at all. *See id.*

(adding "creditresearch" to "transunion.com" suggests that defendant's web site is in the credit

research industry but not necessarily associated with plaintiff's "transunion" mark). As the differences between Defendant's domain names and Plaintiff's trade name become more noticeable, the similarities between the names are likely to appear to consumers as more reflective of the fact that both are being used to designate something having to do with vacuums rather than indicating a common source. *See id.* (quoting *TCPIP Holding Co., Inc. v. Haar Communications Inc.*, 244 F.3d 88, 101-02 (2d Cir. 2001)). While the difference here is not great, the Court finds it to be significant.

Defendant's domain name "bestvacuumcleaner" is nearly identical to Plaintiff's "bestvacuum" mark. The Court finds that there is no meaningful difference between "Best Vacuum" and "bestvacuumcleaner," as internet domain names do not permit spaces between words and "vacuumcleaner" is merely the full name for the "vacuum" cleaning tool that Defendant and Plaintiff are selling. *See id.* (finding one word difference between Defendant's domain name "credittransunion" and Plaintiff's trade name "Trans Union" takes on little distinctive significance where Plaintiff Trans Union is in the credit business). It is entirely conceivable that a consumer searching for "Best Vacuum" would enter "bestvacuumcleaner" in the web address line of their home page instead of using an internet search engine.

Ordinarily, similarity of the marks is considered a significant factor in the likelihood of confusion analysis. In this case, however, "vacuum" is a generic term and "best" is merely descriptive. Because "Best Vacuum" is not fanciful, arbitrary or suggestive, "Best Vacuum" is not entitled to the highest protection and even slight variations in the domain name may be sufficient to create meaningful distinctions between Plaintiff's and Defendant's names. *Compare to Eli Lilly & Co.*, 233 F.3d at 462 (finding that slight variations in spelling or arrangement of

- 17 -

letters are often insufficient to prevent consumer confusion between fanciful marks).[5] Furthermore, as with "bestchoicevacuum" above, the similarities between Plaintiff's and Defendant's domain names may appear to consumers as more reflective of the fact that both are being used to designate something having to do with vacuums rather than indicating a common source.

The Court concludes that the similarity between the marks factor favors Defendant with regard to the "bestchoicevacuum" domain name, and slightly (if at all) favors Plaintiff with regard to the "bestvacuumcleaner" domain name.

The similarity of Plaintiff's and Defendant's products is relevant to the likelihood of confusion analysis. *Jones Group II*, 237 F.3d at 897; *Eli Lilly & Co.*, 233 F.3d at 461. The Court must consider whether Plaintiff and Defendant's products and services are related in the minds of the public. *Eli Lilly & Co.*, 233 F.3d at 463; *Trans Union*, 142 F. Supp. 2d at 1042. Plaintiff and Defendant both operate as third party vendors, selling and advertising many of the same brands and models of vacuum cleaners and accessories, including Miele and Dyson brand vacuum cleaners. For all intents and purposes, Plaintiff and Defendant offer identical products to the market, so this factor favors Plaintiff.

Area and manner of concurrent use affects the likelihood of confusion. *Jones Group II*, 237 F.3d at 897; *Eli Lilly & Co.*, 233 F.3d at 461. The area and manner of concurrent use factor requires the Court to consider whether there is a relationship in use, promotion, distribution or sales between the goods or services of the two parties. *Forum Corp. of N. Am. v. Forum Ltd.*,

---

[5] "Best Vacuum" would be entitled to some protection if Plaintiff establishes secondary meaning. For the reasons discussed above, Plaintiff fails to do so.

903 F.2d 434, 442 (7th Cir. 1990).  Plaintiff and Defendant both operate as third party vendors, selling and advertising many of the same brands and models of vacuum cleaners and accessories on and through the internet, so this factor favors Plaintiff.

When determining the likelihood of confusion, the Court considers the degree of care likely to be exercised by consumers. *Jones Group II,* 237 F.3d at 897; *Eli Lilly & Co.,* 233 F.3d at 461.  Confusion is less likely where consumers are sophisticated and deliberative buyers. *Rust Env't & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1217 (7th Cir. 1997).  The more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 683 (7th Cir. 2001).  The name-brand vacuum cleaners sold on Plaintiff's and Defendant's web sites range in price from approximately two hundred dollars (without accessories) to thirteen hundred dollars (without accessories). *See* www.best-vacuum.com.  Consumer goods that cost over two hundred dollars are not inexpensive products so the Court assumes that the relevant consumers will exercise a fairly high degree of care.

Plaintiff alleges initial interest confusion.  Initial interest confusion occurs when a consumer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated. *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 812 (7th Cir. 2002).  Initial interest confusion is actionable even where the customer confusion is very brief. *Id.; Forum Corp. of N. Am.,* 903 F.2d at 442 n.2.  What is important is not the duration of the confusion but the appropriation of Plaintiff's goodwill. *Promatek Indus.,* 300 F.3d at 812-13.

- 19 -

Plaintiff believes that customers who would have no difficulty differentiating Plaintiff and Defendant's companies in the "offline world" may get confused in the "online world." Plaintiff states that, "An internet user looking for vacuum cleaners using the 'Best Vacuum' mark, after arriving at 'bestvacuumcleaner.com' and 'bestchoicevacuum.com,' may be perfectly content with the information offered by Defendant." (Pl.'s Mem. Supp. Mot. at 5.) Plaintiff contends that this would be an illegal appropriation of its goodwill.

The Court has not been presented with any actual evidence of initial interest confusion. For the reasons discussed above, the Court finds that Defendant's "bestchoicevacuum" domain name is significantly different from Plaintiff's mark and is unlikely to create this type of confusion. Defendant's "bestvacuumcleaner" domain name, however, is very similar to Plaintiff's "Best Vacuum" and may indeed lure away Plaintiff's potential customers. Given the generic and descriptive nature of the terms involved in this case, however, the Court is hesitant to find appropriation of goodwill. Plaintiff deliberately chose a trademark that is likely to be used by potential customers searching for high quality vacuum cleaners. While Defendant's use of similar words may cost Plaintiff some business, Plaintiff is as likely to gain business by using generic and descriptive terms to cast a wide advertising net. Thus, to whatever extent initial interest confusion exists in this case, the Court finds that it does not necessarily favor Plaintiff. And because the vacuum cleaners involved in this case are high end, high quality consumer goods, the degree of care factor, overall, favors Defendant.

The Court must determine the strength of Plaintiff's mark when assessing the likelihood of confusion. *Jones Group II,* 237 F.3d at 897; *Eli Lilly & Co.,* 233 F.3d at 461-62. Strength of a mark refers to its distinctiveness, meaning its propensity to identify the products or services

sold as emanating from a particular source. *CAE, Inc.*, 267 F.3d at 684. Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988).

Plaintiff points to its twenty-one years of using the mark "Best Vacuum," over one million dollars spent on advertising, and over sixty thousand dollars per month spent on internet advertising and Plaintiff's web page. Plaintiff also presents Epinion.com reviews and surveys as evidence of a strong mark. Plaintiff is essentially restating its secondary meaning arguments, which the Court did not find persuasive. More importantly, the Court found that Plaintiff's mark was merely descriptive, which makes it less likely to be a strong mark. *See Century 21 Real Estate Corp.*, 846 F.2d at 1179. Thus, the Court finds that Plaintiff does not have a strong mark and this factor favors Defendant.

Actual confusion is very important to establishing likelihood of confusion. *Jones Group II*, 237 F.3d at 898; *Eli Lilly & Co.*, 233 F.3d at 462. Evidence of actual confusion, however, is not essential to a finding of likelihood of confusion. *Eli Lilly & Co.*, 233 F.3d at 465. In cases like the one at bar, where Defendant used its domain names only for a few months before Plaintiff filed suit, there is unlikely to be evidence of actual confusion and the absence of such evidence is not dispositive. *Id.* at 464-65; *Trans Union*, 142 F. Supp. 2d at 1043. Accordingly, this factor neither favors nor disfavors Plaintiff.

Determining Defendant's intent (or lack thereof) to palm off its products as those of Plaintiff's is critically important when assessing the likelihood of confusion. *Jones Group II*, 237 F.3d at 897-98; *Eli Lilly & Co.*, 233 F.3d at 462. In the internet context, intentional registration of a domain name knowing that it is another company's valuable trademark weighs in favor of

likelihood of confusion. *See Brookfield Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999); *Trans Union*, 142 F. Supp. 2d at 1044. Plaintiff argues that Defendant must have known about Plaintiff's mark because Defendant is an expert in internet marketing and Plaintiff advertises extensively on the internet. Furthermore, Plaintiff alleges that Defendant decided to register "bestchoicevacuum.com" after Plaintiff complained about Defendant's use of "bestvacuumcleaner.com."

Plaintiff fails to show that Defendant's intent is to palm off its products as those Plaintiff. Nothing on Defendant's web site suggests that Defendant is trying to palm off Plaintiff's products or make use of Plaintiff's "Best Vacuum" name. More importantly, Defendant does not use Plaintiff's logo anywhere on the web sites. *Compare to Trans Union*, 142 F. Supp. 2d at 1044. Rather, Defendant uses generic and descriptive words to market its products. Accordingly, the Court rejects Plaintiff's suggestion that Defendant's use of the generic and descriptive words "best" and "vacuum" is a bad faith attempt to use key words to confuse potential customers searching for Plaintiff. Finally, as "Best Vacuum" has not acquired secondary meaning, there can be no intentional registration of another company's valuable mark, nor intentional registration of a trademark owned by another company. *Compare to Brookfield*, 174 F.3d at 1059. The Court will not infer from Defendant's domain names alone that Defendant intends to palm off Plaintiff's products as its own, and there is no other evidence suggesting that Defendant is deliberately copying Plaintiff. Accordingly, the Court does not find palming off in this case.

Plaintiff has not shown a likelihood of confusion. As discussed above, the Court finds that the similarity of products and the area and manner of concurrent use factors strongly favor Plaintiff. The Court finds that the degree of care, strength of Plaintiff's mark, and Defendant's

lack of intent to palm off products strongly favor Defendant. Evidence of actual confusion does not favor either party. The similarity between the marks strongly favors Defendant with regard to "bestchoicevacuum" and slightly (if at all) favors Plaintiff with regard to "bestvacuumcleaner." Given the above factors, the Court finds Plaintiff has no chance of showing likelihood of confusion with regard to Defendant's domain name "bestchoicevacuum" and a negligible chance of showing likelihood of confusion with regard to Defendant's domain name "bestvacuumcleaner."

### c. No likelihood of success on the merits

Plaintiff has no likelihood of success on the merits. Plaintiff's "Best Vacuum" mark has not acquired secondary meaning so it is not entitled to trademark protection under the Lanham Act and an injunction should not be issued. Furthermore, even if a Court found that Plaintiff's mark had acquired secondary meaning, Plaintiff has no likelihood of success on the merits against Defendant's use of the "bestchoicevacuum" domain name and a negligible likelihood of success on the merits against "bestvacuumcleaner." Accordingly, to the extent Plaintiff relies on Section 43(a) of the Lanham Act, the Court recommends denying Plaintiff's motion for preliminary injunction.

This recommendation extends to Plaintiff's 815 ILCS 510/2 claim as well. The relevant claims under 815 ILCS 510/2 include (1) passing off goods or services as those of another, (2) causing likelihood of confusion or misunderstanding as to the source of goods, (3) causing likelihood of confusion or misunderstanding as to affiliation, connection or association by another, (4) representing that goods or services have sponsorship, approval, characteristics,

- 23 -

ingredients, uses, or benefits that they do not have, and (5) any other conduct which similarly creates a likelihood of confusion or misunderstanding. 815 ILCS 510/2(a)(1)-(3), (5), (12). These issues are discussed above and are subject to the same analysis and outcome. *Gimix*, 699 F.2d at 908; *Spex, Inc.*, 847 F. Supp. at 579; *Thompson*, 466 N.E.2d at 1010. Accordingly, to the extent Plaintiff relies on 815 ILCS 510/2, this Court recommends denying Plaintiff's motion for preliminary injunction.

<blockquote>
3.    <u>Plaintiff cannot demonstrate a greater than negligible chance of prevailing on the merits under Section 43(c) of the Lanham Act 43(c) because Plaintiff cannot show that its mark is famous nor that Defendant's mark will dilute Plaintiff's mark.</u>
</blockquote>

Plaintiff brings a dilution claim under the Federal Trademark Dilution Act of 1995, which "opens an alternative avenue of relief for the owners of famous marks." *Eli Lilly & Co.*, 233 F.3d at 466. The Act provides:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c)(1). The Seventh Circuit recognizes three types of dilution: tarnishing, blurring, and free-riding. *Ty Inc. v. Perryman*, 306 F.3d 509, 511-12 (7th Cir. 2002) ("*Perryman*"). Dilution by tarnishing occurs when a junior mark's similarity to a famous mark causes consumers mistakenly to associate the senior mark with the defendant's offensive or inferior product. *Eli Lilly & Co.*, 233 F.3d at 466. Dilution by blurring, which is the principal

dilution claim before the Court, occurs where a mark becomes associated with a variety of unrelated products, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product. *Id.* Dilution by free-riding occurs where the holder of a junior mark essentially appropriates the goodwill and/or aura of a senior mark and free rides on the investment of the senior mark's owner. *Perryman*, 306 F.3d at 512. Ultimately, likelihood of dilution is proven by reference to the marks' similarity and the strength of the senior mark. *Eli Lilly & Co.*, 233 F.3d at 468. As in the other sections of the Lanham Act, "[t]he strongest protection is reserved for fanciful marks that are purely the product of imagination and have no logical association with the product." *Id.* at 466.

To demonstrate dilution, Plaintiff must show that its mark is famous, that Defendant adopted its domain names after Plaintiff's mark became famous, that Defendant's marks cause dilution of Plaintiff's mark, and that Defendant's use of its domain names is commercial and in commerce. 15 U.S.C. § 1125(c)(1); *Eli Lilly & Co.*, 233 F.3d at 466. There is no dispute that Defendant's use of its domain names is commercial and in commerce. Furthermore, Defendant's use of its domain names followed Plaintiff's use of its mark. Accordingly, the Court focuses its inquiry on the fame of Plaintiff's mark and whether Defendant's marks cause actual dilution. To determine whether Plaintiff's mark is famous, courts use the following eight factor test: (1) the degree of inherent or acquired distinctiveness of the mark; (2) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (3) the duration and extent of advertising and publicity of the mark; (4) the geographical extent of the trading area in which the mark is used; (5) the channels of trade for the goods or services with which the mark is used; (6) the degree of recognition of the mark in the trading areas and channels of trade used

by the mark's owner and the person against whom the injunction is sought; (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. 15 U.S.C. § 1125(c)(1)(A)-(H). Finally, to successfully bring a dilution claim, Plaintiff must show actual dilution. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433-34 (2003); *Sullivan v. CBS Corp.*, 385 F.3d 772, 779 (7th Cir. 2004).

### a. Fame of Plaintiff's mark

The Court first assesses the degree of inherent or acquired distinctiveness of the mark. 15 U.S.C. § 1125(c)(1)(A). In this case, Plaintiff's "Best Vacuum" mark lacks inherent or acquired distinctiveness. As discussed above, Plaintiff's mark is comprised of, at best, highly descriptive terms and is not inherently distinctive. Furthermore, the mark has not acquired secondary meaning.

The Court considers the duration and extent of use of the "Best Vacuum" mark in connection with Plaintiff's goods and services. 15 U.S.C. § 1125(c)(1)(B). Plaintiff has done business under the name "Best Vacuum" for twenty-one years. (Pl.'s Compl. at Ex. B.) Plaintiff has done business on and through the internet under the name "Best Vacuum" for approximately eight years. (Id.)

Courts consider the duration and extent of advertising and publicity of the mark when assessing the threat of dilution. 15 U.S.C. § 1125(c)(1)(C). Plaintiff claims to have spent over one million dollars on advertising for its mark. (Id.) Plaintiff claims to spend approximately

sixty thousand dollars per month on internet advertising and maintaining its web site. (Id.)
Plaintiff claims that its gross sales were approximately $3.75 million last year. (Id.)

The geographical extent of the trading area in which the mark is used is relevant to the
dilution inquiry. 15 U.S.C. § 1125(c)(1)(D). Plaintiff operates on the internet, thereby reaching
geographical and trading areas around the world. In particular, Plaintiff claims to have
significant business dealings in North America and Europe. (Id.)

Courts consider the channels of trade for the goods or services with which the mark is
used. 15 U.S.C. § 1125(c)(1)(E). In this case, Plaintiff uses its "Best Vacuum" mark on the
internet and through its retail stores.

The degree of recognition of the "Best Vacuum" mark in the trading areas and channels of
trade used by Plaintiff and Defendant is relevant to the dilution inquiry. 15 U.S.C.
§ 1125(c)(1)(F). As discussed above, Plaintiff and Defendant both occupy the same trading areas
and channels of trade, as both market their goods on and through the internet. The Court has not
seen any evidence regarding the degree of recognition of Plaintiff's mark, except in the context of
secondary meaning. Again, as discussed above, the evidence that has been presented to the Court
does not suggest that Plaintiff's mark has a high degree of recognition, nor that Plaintiff's mark
has acquired secondary meaning.

Courts look to the nature and extent of use of the same or similar marks by third parties
when assessing dilution. 15 U.S.C. § 1125(c)(1)(G). Plaintiff argues that there is no other
similar federally registered mark and that there can be only one "bestvacuum.com" domain name.
Plaintiff claims that it aggressively attempts to stop any entity or individual that uses the term
"best vacuum." The parties dispute whether there are other domain names making use of the

- 27 -

words "best" and "vacuum" and whether Plaintiff is aggressively attempting to stop those uses. Plaintiff has not presented specific examples of legal action or negotiations or challenges brought by Plaintiff against third parties using marks similar to Plaintiff's. Defendant has presented evidence of such a web site, namely "bestvacuumstore.com" (Decl. Charles Lee Mudd Jr. at Ex. C.) Defendant also presented evidence of third parties using the phrase "best vacuum" in the text of their web sites to promote their products and services or to answer questions about vacuum cleaners. (Id.)

Finally, when assessing the fame of Plaintiff's mark, the Court considers whether Plaintiff's mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. 15 U.S.C. § 1125(c)(1)(H). Plaintiff's mark is not registered under the Act of March 3, 1881, the Act of February 20, 1905, or on the principal register. To date, Plaintiff's attempts to register its mark have been denied. (Decl. James Kole at Ex. A.)

Based on the eight part test, the Court concludes that Plaintiff's mark is not famous. While Plaintiff clearly invested time and money into its business, Plaintiff's mark is not distinct and has not acquired secondary meaning, there is no clear evidence of the mark's degree of recognition, and it appears that some third parties are using terms similar and/or identical to Plaintiff's mark. Plaintiff improperly analogizes this case to *Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227 (N.D. Ill. 1996). In *Intermatic*, defendant diluted the federally registered fanciful mark "intermatic" when he registered the domain name "intermatic.com." *Id.* at 1240. That court found that the defendant was a cyber-squatter whose use of "intermatic.com" was deceptive, confusing, and lessened the capacity of the Intermatic mark to identify and distinguish goods and services on the internet. *Id.* Unlike Intermatic, Plaintiff's mark is not famous, fanciful

or federally registered. Unlike Intermatic, Defendant did not register a domain name identical to Plaintiff's mark. As close as "bestvacuum" and "bestvacuumcleaner" may be, they are not identical.

### b. Actual dilution

"In order to state a claim of dilution, proof of actual dilution is required, either through survey, financial, or circumstantial evidence." *Sullivan*, 385 F.3d at 779 (citing *Moseley*, 537 U.S. at 434). While such trial-like evidence of actual dilution must be produced before Plaintiff can win permanent relief and/or damages, evidence of actual dilution cannot be required at the preliminary injunction stage, *see Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528, (7th Cir. 2003) (citing *Moseley*, 537 U.S. at 434); *Eli Lilly & Co.*, 233 F.3d at 468-69, so its absence in this case does not bar Plaintiff's dilution claim.

### c. No likelihood of success on the merits

Plaintiff has not shown that its mark is famous, nor that actual dilution has occurred. The Court concludes that Plaintiff cannot show a likelihood of success with regard to its Section 43(c) blurring dilution claim. Furthermore, because Plaintiff has not shown that its mark is famous, nor that Defendant is intentionally using Plaintiff's mark, the Court rejects Plaintiff's suggestion that Defendant is free riding on Plaintiff's investment in its mark. (Pl.'s Compl. at 3.)

### B. Adequate Remedy at Law and Irreparable Harm

An injunction will not issue if Plaintiff has an adequate remedy at law. There is a well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss. *Promatek Indus.*, 300 F.3d at 813; *Jones Group II*, 237 F.3d at 902; *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992). This presumption is based upon the judgment that it may be impossible to determine the precise economic consequences of intangible harms, such as loss of goodwill and damage to reputation, caused by Lanham Act violations. *Jones Group II*, 237 F.3d at 902 (citing *Abbott Labs.*, 971 F.2d at 16).

Defendant argues that Plaintiff's inaction in defending its name suggests that Plaintiff will not suffer irreparable harm. Defendant points out that Plaintiff waited twenty years before seeking federal registration of its mark, and Defendant asserts that Plaintiff has not filed suit against any of the "multitude of web sites and entities using the term 'best vacuum' on the internet." (Def.'s Mem. Opp. Pl.'s Mot. at 13.) While delay in and of itself does not preclude a finding of irreparable harm, where a plaintiff delays bringing a temporary injunction, such that the defendant was lulled into a false sense of security or acted in reliance on the plaintiff's delay, the presumption of irreparable harm may cease to exist. *Jones Group II*, 237 F.3d at 903. The Court rejects Defendant's argument that Plaintiff delayed seeking relief. In this case, Plaintiff immediately challenged Defendant's use of the domain names at issue and Defendant admits that Plaintiff did not delay in moving for a preliminary injunction. (Def.'s Mem. Opp. Pl.'s Mot. at 12.) Plaintiff's delay in registering its mark is relevant to the protectability of the mark but is not the delay contemplated by the irreparable harm analysis. Accordingly, the Court presumes no adequate remedy at law and irreparable harm to Plaintiff.

## C.   Balance of Harms and Public Interest

In the event that Plaintiff establishes likelihood of success on the merits and inadequate remedy at law and irreparable harm, the Court considers the balance of harms and the public interest in granting or denying a preliminary injunction.

### 1.   Balance of harms

The Court considers the irreparable harm to Defendant if Plaintiff's preliminary injunction is granted, balancing that harm against the irreparable harm to Plaintiff if the preliminary injunction is denied. *Abbott Labs.*, 971 F.2d at 11-12. Plaintiff does business under the name "Best Vacuum." Plaintiff has invested twenty-one years and over one million dollars in its business. Plaintiff has maintained its web site and has conducted business on and through its web site for approximately eight years.

Defendant does business under the name "Ian Design, Inc." Unlike Plaintiff's web sites, Defendant's domain names appear to function solely as internet addresses and not as source identifiers. Defendant registered its "bestvacuumcleaner.com" domain name in November 2003. Then, despite Plaintiff's objections, Defendant registered its "bestchoicevacuums.com" domain name in March 2004. The timing here is significant because Defendant knowingly assumed the risk of litigation when it registered the "bestchoicevacuums.com" domain name. Next, the Court has not seen any significant evidence of reputation or goodwill in Defendant's business. And with regard to either "bestchoicevacuum.com" or "bestvacuumcleaner.com," the Court finds that any goodwill Defendant may have accumulated since November 2003 is negligible compared to Plaintiff's goodwill.

Defendant argues that enjoining it from using the terms "best and "vacuum" in association with its vacuum business would place it at an unreasonable and unsupportable disadvantage to all other vacuum businesses using such terms. The Court agrees that the "Best Vacuum" mark is, at best, highly descriptive and that placing limitations on use of the words "best" and "vacuum" causes significant harm to competitors' ability to advertise and compete in the vacuum cleaner industry. However, the Court recognizes that Defendant can make extensive use of the words "best" and "vacuum" on its web sites without placing the words in its domain name. Through key words and internet search engines, Defendant can mitigate some of the harm it would suffer if the domain names "bestchoicevacuums.com" and "bestvacuumcleaner.com" are off-limits. Thus, the Court finds that the balance of harms favors Plaintiff.

2. Public interest

The public interest factor takes into account the effect that granting or denying an injunction would have on nonparties. *Meridian Mut. Ins. Co.*, 128 F.3d at 1121. Enforcement of trademark law serves the public interest by reducing consumer confusion. *Eli Lilly* & Co., 233 F.3d at 469; *Int'l Kennel Club of Chicago*, 846 F.2d at 1092 n.8. However, trademark protection should not interfere with the traditional policies of a competitive market, and courts have generally recognized that the public substantially benefits from competition. *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). An essential component of competition is availability of words for advertising, promoting, and informing the public.

Public interest in preventing confusion is minimal in this case. Both parties in this case sell brand name vacuum cleaners. To the extent that Defendant's domain names might cause consumer confusion, it is initial interest confusion regarding the vendor of the vacuum cleaner not the products themselves. While it is possible that initial interest confusion may cause a small degree of public confusion, the real harm in this case appears to be to Plaintiff, with the public experiencing negligible harm only. A consumer who arrives at Defendant's web site by accident may choose to purchase his vacuum cleaner from Defendant instead of Plaintiff, but the Court is confident that he makes that purchase knowing that he is not doing business with Plaintiff. The Court finds that, in this case, this degree of confusion is acceptable and does not weigh heavily in favor of granting Plaintiff's injunction.

Public interest in preserving competition is significant. Plaintiff has selected the highly descriptive term "Best Vacuum" for its company name. Just as a consumer looking for Plaintiff's company may find himself at Defendant's web site, so too might a consumer searching for the best vacuum cleaner on the market find himself at Plaintiff's web site. In short, as discussed above, Plaintiff chose a highly descriptive term for its company name in an attempt to capture valuable words in the vacuum cleaner market for its exclusive use. The Court finds the term "Best Vacuum" is descriptive and therefore valuable to the marketplace and to competition. Public interest will be significantly injured if basic words are removed from the vacuum industry's lexicon.

Because granting Plaintiff's preliminary injunction will restrict competition and cause greater harm to the public than would denying Plaintiff's injunction, the Court finds that the public interest favors denying Plaintiff's injunction.

### D. Sliding Scale: Plaintiff has not satisfied its burden.

To secure a preliminary injunction, Plaintiff must show that its mark is entitled to trademark protection and that Plaintiff's action has a greater than negligible chance of prevailing on the merits. If Plaintiff succeeds in showing both protectability and likelihood of success, the Court then balances the harm that granting or denying an injunction will cause each party, as well as the harm caused to the public. *Eli Lilly & Co.*, 233 F.3d at 461. When assessing the balance of harms to the parties and to the public the Court should try to minimize the costs of being mistaken. *Jones Group II*, 237 F.3d at 902. Thus, where Plaintiff's likelihood of success on the merits is slight, Plaintiff must make a proportionately stronger showing that the balance of harms is in its favor. *Id.* at 903-04.

In this case, the Court finds that Plaintiff's mark is not entitled to trademark protection, as "Best Vacuum" is merely descriptive and has not acquired secondary meaning. The Court also finds that Plaintiff has no likelihood of success on the merits with regard to its infringement or dilution claims. In the event that Plaintiff establishes both a greater than negligible chance of prevailing on the merits and irreparable harm with no adequate legal remedy, the Court finds that the balance of harms factor favors Plaintiff while the public interest factor favors Defendant. Because the balance of harms and public interest do not strongly favor Plaintiff, and because Plaintiff has, at best, a negligible chance of succeeding on the merits, the sliding scale evaluation suggests that Plaintiff has not carried its burden and is not entitled to a preliminary injunction. Accordingly, this Court recommends denying Plaintiff's motion for preliminary injunction.

### III.  Conclusion

For the foregoing reasons, the Court recommends denying Plaintiff's motion for

preliminary injunction.

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated:  January 18, 2005.

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable William T. Hart within ten (10) days after service of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b). Failure to object will constitute a waiver of objections on appeal.

Copies have been mailed to:

DAVID M. ADLER, Esq.                    CHARLES LEE MUDD, JR., Esq.
David M. Adler, Esq. & Associates, P.C.  Law Offices of Charles Lee Mudd, Jr.
2 North LaSalle Street                   3344 North Albany Avenue
Suite 1600                               Chicago, IL  60618
Chicago, IL  60602

Attorney for Plaintiff                   Attorney for Defendant